And final case of the day, the last case of the week, is 23-20618 Shahrashoob v. Texas A&M University. Y'all feel free to get settled for a little bit. Okay, Mr. Hoopman, take it away. I feel pleased to report, my name is Tim Hoopman, I represent the appellant in this case. And jumping straight to really, I think it's the crux of this case, if Texas A&M really had budgetary constraints and teaching concerns, issues for the actions that they took, they would not have hired Dr. Elam to replace my client because they had to pay him also, and he was doing exactly the same thing. So when you take that core argument of the case and then you run through the legal analysis, it's really, to me, quite easy. And so the legal analysis begins . . . Before you get too far into the legal analysis, Mr. Hoopman . . . Yes, sir. You didn't file a reply brief in this case, correct? No, sir. So the appellees raised the issue of forfeiture concerning this argument with Dr. Elam and whether he replaced your client. Certainly the issue of Dr. Elam was in the EOC charge as well as in the complaint, but I looked very closely through your brief to Judge Rosenthal below, and I saw no mention of Dr. Elam at all. So what is your response to the argument that you have not forfeited that argument here on appeal? You mean in the trial court or on appeal? At the trial . . . well, here on appeal. You've raised it here on appeal, but in the trial court. Right, in the trial . . . Judge Rosenthal was not pointed to Dr. Elam at all on summary judgment. In the summary judgment declaration of my client, she specifically states that the department replaced me with Muhammad Elam, an Indian male faculty who did not even have a chemical engineering degree. Well, I understand that it's in the bowels of the summary judgment evidence. I'm talking about the brief where the university filed a summary judgment saying that there's no question of fact, and then to . . . and then in your brief, in response to that, there was no mention of Dr. Elam at all to the district court. In the response to the summary judgment? Yes. Yes, okay. That's on . . . the response says, quote, and this is on page 25 of the appellant's brief, no other similarly situated employee was forced out. And I do agree that there was no great discussion about Elam, but that's . . . Was there any discussion about Dr. Elam? I think that section that I just quoted to is . . . and also the court's opinion talks about . . . and I have a quote for that, if I can find it here. The court says something to the effect . . . The district court acknowledged that because it specifically states in the opinion to the extent that the plaintiff relies on other members as comparators because the court's . . . the district court's opinion was talking about the Fifth Circuit's strong emphasis on how the other employees that were treated differently have to be very similarly situated. So, as comparators, meaning the other faculty members, she has failed to show whether they were similarly situated to her. Is there a distinction between whether or not someone was similarly situated or treated less favorably and whether or not they're replacing your client? Is that . . . I mean, I think that's the distinction that was made. Okay, well, there's . . . Is there anything in the brief, not the declaration, but is there anything in the brief that discusses Dr. Elam as replacing your client? Not other than that section that I cited to you on page 25, which I just read to the court. It doesn't say by name, Dr. Elam. The brief is more along the lines of, look, she was treated differently by being discharged. So that's really how the brief was pitching it. But it was kind of a self-evident fact to me, because it was in the declaration, that she was, in fact, replaced. I don't believe that the district court did not know that . . . The fact that it is put forth in a declaration or an affidavit, but not in the brief itself sufficient to preserve that argument? Certainly, you can do better for . . . you can make it clearer. But I do believe that for summary judgment purposes, that is enough, because the issue is whether or not . . . You know, the fair pleadings rule and all that, you have to put enough in there for everyone to know what you're talking about. And so here, everyone that was involved in the trial court proceedings knew that they were talking about my client having been not only fired, but replaced. And then the trial court's opinion doesn't address Dr. Elam. She's focused on Dr. Holtzi. Why do you think it was that she was focused on Dr. Holtzi? Because there was the . . . Because of your briefing below focused on Dr. Holtzi, correct? Certainly that's . . . yes, of course, yes. But more specifically, because there was a website that was placed in the summary judgment response that had his website within the university showing his qualifications and such. So, since you focused on Dr. Holtzi below, I didn't see Dr. Holtzi mentioned at all in your appellant's brief. Are you conceding that Dr. Holtzi was not similarly situated? I would have to agree with that, yes. All right, so that's what . . . Given the Fifth Circuit's very tight opinions on how you got to deal with that. However, that's . . . there's two ways to prove a discrimination case. You prove either that someone was replaced with someone outside the protected group or that they're similarly situated. And here she was saying, I was replaced by somebody outside the group, namely the male Indian that was Dr. Lam. And so, the similarly situated situation . . . So, no, I don't concede for both purposes the either-or way of proving a discrimination claim. But, clearly, the very . . . the thing that's missing out here and the key part of this is how she was replaced. Because that bears down on both the third element of a discrimination claim and the third element of a retaliation claim. And she was . . . also, it bears down on their excuse for . . . their neutral excuse for their actions that they took. Because if you replace her with this person, then that's the strong reason that overcomes their explanation . . . their race-neutral explanation for doing what they did, if you see what I mean. But, to say that it was forfeited when it's right in the Declaration of the Plaintiff . . . It's also mentioned, but not by name, on page 25 of the brief, aside to the portion of the argument, the response to the summary judgment. And also, the trial court's opinion does address it. Although, not by name, but says with respect to other people that are the comparators, which would be Dr. Lam. So, I don't think that it's . . . you know, I don't think that it's forfeited. Do you think Judge Rosenthal might have addressed Dr. Lam, had you raised it in your brief below? That issue, that she was . . . that your client was replaced? I think that if it was written on harder, like it was with Dr. Hoyte, that certainly the trial judge would have addressed it more clearly. Because it looked so much . . . so important to the parties, and they're going to, you know, they're going to address that. But, to take this second leap, which you're pushing me hard on, is that did she not address it? Or did we not raise it? I just don't agree with that, because I think she did address it. And, I do think that it was raised, although certainly it could have been raised better. But, it was raised enough for everyone to know what was being spoken about. Because she was replaced, and the trial judge did know that. And, that's obviously . . . and I think for purposes of the writing, you know, everybody factored that in. Okay. So, I feel like that's the main issue for the court. If you had any other questions on that, I'd certainly like to engage with it. Since you mentioned Dr. Alam, and that's what is . . . what you are asking the court to decide that it's not forfeited, and that Dr. Alam was similarly . . . was . . . replaced her in this case, where in the record can you point us to Dr. Alam's credentials? Whether he has a Ph.D. What is that Ph.D. in? What position was he hired for? When was he hired? How is he similarly situated to Dr. Shaharshu? Where can we find that in the record? In her declaration. In my client's declaration. Can you point me to that? Because, I didn't see any of that in her declaration. Okay. Well, she . . . I agree with you that this record could definitely be better in the trial court. Okay. I'm not trying to say it's a great record. But, the question is whether there's enough for the trial judge knowing what was being adjudicated. And, so . . . I don't think the other side is going to say that . . . To me, it's a given that she was replaced. Everyone admits that she was fired. And, that's even . . . that's all over the appellate record. I don't have the spots out, because to me it's so obvious that that's in the record that she was . . . That's why we're even here. And, also there's no dispute that she was replaced with Dr. Alam, because that's literally what happened. And, it's all . . . everyone . . . Where other than her declaration does that appear? I can't say. That she was actually replaced in the same position that she held. What position was Dr. Alam hired for? Was it for an associate professor, non-tenure? I don't know from the record. Can you point it to me? It's not in there, for that degree of specificity. He was replaced to be the chemical engineer instructor, just like my client was. That's literally the position that he was given. And, so . . . That's just where we're at on those facts. So . . . As far as the elements of each cause of action, the discrimination claim requires showing that the plaintiff is a member of a protected group. And, everyone admitted that. And, the trial judge even said it in her opinion. That's element number one, that she was qualified for her position. There's no issue that she was not qualified. And, the trial court even admitted to that. Because she was fired because of their explanation, which was monetary concerns and teaching requirements. And, so . . . The third element is that she was replaced by someone outside the class. Which she was, except for you raising the issue that it may not even . . . That may not even be on the record. And, so . . . And, so she was . . . The person, Dr. Alam, replaced her for this very same position, the teaching position. And, so that's . . . Those are the elements of the cause of action. And, then that . . . By the fact that she was replaced by a . . . That her position was replaced, that overcomes . . . That's substantial evidence that overcomes the burden shifting that the government put on. Because they wouldn't have fired him, had they . . . Had financial situations or teaching concerns. And, so with all that said, I would request the court to reverse. And, I will definitely supplement on record sites for the issues that you were raising, Your Honor. That would be helpful. Thank you. Thank you. Mr. Reutemann, thank you very much. Mr. Ables, welcome. Thank you, Your Honor. And, may it please the court. Dr. Sharashoub can't show pretext. But, before we touch on that issue of the burden shifting framework, I'd like to make two quick points about her discrimination claim. And, this is what the court was just addressing. First, she can't show that she's similarly situated to anyone she's pointed to in the record. She just conceded that she's not similarly situated to Dr. Holst. She's not similarly situated to the two tenured professors who were hired after her, because they're tenured. And, she's not similarly situated to Dr. Alam, number one, because the only information we have about him in the record is that he doesn't have a chemical engineering degree or background. And, number two, she actually argues the same, that they're different on her brief on appeal at page 41 and 42. The second point I'd like to make about her discrimination claim is, she can't establish a prima facie case with her alternative theory now that she was replaced because it's forfeited. So, I want to talk a second about the brief to the district court that she submitted, her response to summary judgment. Before you do, I have a question about your brief. Yes, Your Honor. So, Dr. Sharshroo very clearly filed two EOC charges. She mentions Dr. Alam at least in one of them and says that he replaced her directly in this position. And, I'm not sure if it's in the first, if it was in the first, in the original complaint, but certainly in the live complaint at the time, she makes that allegation about Dr. Alam replacing her. A&M files summary judgment does not address the issue of Dr. Alam and goes straight for, and replacement, and goes straight for similarly situated and discusses Dr. Holtzi. So, in order to get that issue before Judge Rosenthal, would it not have been better form to address that issue? Your Honor, it certainly may have been better form. I think that her response is not, she's not precluded from making the argument that she was replaced by Dr. Alam simply because the university decided not to focus on that argument in the summary judgment. Our argument in summary judgment was she cannot establish a prima facie case of discrimination. It certainly focused on whether she's similarly situated or not. That's probably because discovery focused on Dr. Holtz and Dr. Alam was not deposed, and there's no information of Dr. Alam in the record besides the sole allegation of her complaint and the EOC complaint along with her declaration, of course. But she's not cabined in to the argument that defendants, the university, makes on summary judgment. If she'd like to say, hold on, I'd like to rebut and say I am similarly situated, but also I was replaced regardless. Anyway, she has the ability to do that on her response. And in her brief on response, she didn't mention the name of Dr. Alam. She provided no legal analysis about being replaced at all, about the replacement theory. In fact, her recitation of the four elements of a discrimination prima facie case does not mention replacement theory. Her fourth element says she was treated less favorably than similarly situated employees outside of protected class. It does not say or replaced by someone outside of her protected class. And so we put forth that she has not raised that to the district court. The district court was not able to comb through her. We know the district court looked at her declaration, but it did not comb through that to make arguments for her that she did not present to try to make her case for her. And because the district court did not sufficiently consider that, we contend that she's forfeited the argument. Outside of just her discrimination prima facie case as well, the real issue here is that she can't establish pretext anyway. And so I'd like to kind of take this claim by claim discrimination and retaliation. They're similar, but there's one or two differences. The university, of course, has put forth two reasons, academic needs of the department and budgetary constraints. She has to be able to rebut both of those. She needs to provide substantial evidence to create a genuine dispute of fact over both of those. And she's failed to do so. There was a mention, I think, from my friend on the other side about Dr. Alam's salary, and because Dr. Alam was hired and replaced her, there must not have been a budgetary constraint. She made a very similar argument to the district court about the two tenured professors. She said, there was two tenured professors hired after me. That would show, of course, that budgetary constraints is a pretextual reason. The university had money to pay people. The district court dealt with that very swiftly. It said, in fact, the two tenured professors she pointed to, and I'm quoting here, Dr. Sharshoop has not identified evidence that the two new professors who, unlike Dr. Sharshoop, were hired to fill tenure track positions, served the same teaching needs that she had served. So regardless of whether the university has hired someone after her, and of course there's no evidence of Dr. Alam's salary, we don't know how much money he was making. When she was hired at the university, she made $63,000 a year. Her current salary after the 4.5-month contract was about $74,000. We don't know if Dr. Alam was making $74,000 or $63,000 or more or less. There's just not enough information. And Judge Morales, to a point you made earlier, the only information we have on Dr. Alam in the record as to teaching needs of the department is the statement she makes about he didn't have a chemical engineering degree or background. We don't know the courses he was teaching. We don't know the research he was conducting. We know the department has certain research goals. Dr. Jayaraman talks about this in an e-mail exchange back and forth. She e-mails him with a number of complaints and questions after her contract was shortened in August 2020. Dr. Jayaraman e-mails back and describes, number one, this was due to budgetary constraints in teaching needs of the department, and number two, again, talks about the research and department goals the department is trying to reach. We don't have any of that information about Dr. Alam. We don't know, like I said, the courses he was teaching, the research he's conducting. We don't know whether he teaches senior students, freshman students. She also mentions in her declaration that she trained him. We don't know whether that means she trained him on specific classroom software of the specific courses she was teaching or whether she trained him on how to enter grades into the system like every professor does. There's just not enough information to provide substantial evidence rebutting either teaching needs or budgetary constraints of the department, and that's even assuming that she's established a prima facie case. I'd like to make another quick point about retaliation, pretexts as to the retaliation claim. My friend on the other side's brief focuses on the term causal connection. Causal connection is the language in the prima facie case of retaliation. It's that third element. You need a causal connection, a much less stringent standard than the but-for causation needed at the pretext stage. The university is not contesting that she's established a retaliation prima facie case. The issue on appeal is whether she's established a pretext on her retaliation claim. Temporal proximity, and the district court notes this, can be enough to establish a causal connection. It is not enough alone to establish pretext. And if I see that there are no further questions, I would offer the rest of my time, and we would ask the Court to affirm the grant to summary judgment. I have no further questions, but I do note and I wanted to comment on the 28J letter that was filed yesterday afternoon. I took a look at it this morning, and certainly I'm familiar with the Ibanez case since it came out of my court. The one thing that I would caution counsel on is to not include argument in 28J letters. It's not extreme, but I think you can fairly construe some of the comments in there as argument. And the Court does appreciate 28J letters, and I think it was timely since that case was just handed down on Tuesday? The 8th.  But in the future, let's not see that. Yes, Your Honor. All right. Mr. Ables, thank you. Thank you. Appreciate your argument. Mr. Hoopman, you're back for a whopping three minutes. Not seen on waiver. Okay, so the replacement issue about Elam, that was in the second amended complaint on record at page 256. She clearly states, I was replaced by Elam. That's in the complaint. Okay, the declaration clearly states the qualifications that she had over Elam, and it makes it clear that she was being replaced by Elam to do the exact same job. Okay, so then the only issue, and legitimate issue, I'm not trying to, is how clear does it have to be stated in the response to the summary judgment? It's not very clear, and I acknowledge that, and when I first got it, I looked at that, and I recognized it as a problem. But I don't think that, I think it's clear enough because the Court actually addressed it without stating the name of Elam. And she did that because of what she was saying about the other comparative employees that are out there. And so the obvious one to compare it with is the one she was replaced with. And so if she's replaced by the man, then that rebutts their neutral reason for firing her, which is we've got budgetary concerns and teaching issues. Well, you're paying someone else to do the exact same job, so it's the same. The teaching concerns are resolved. It's a pretext because the person she was replaced with is doing the same job. So the teaching issues are not an issue, and the budgetary concerns are not legitimate because the university is paying the exact same sum that they're paying to her. And so under those circumstances, I think it's not forfeiture. Clearly, it could have been done better. It wasn't. It's what I'm dealing with here. But I think that it is fair game for purposes of summary judgment purposes. And I do think that there's nothing else that I could cite to in the record, although I'm going to go double-check that. But I did actually look at these issues and was looking for the best sites that I could get when I prepared the brief. So I know I said that I'll go and double-check. But after sitting there, I didn't expect to have such heavy questions on forfeiture, actually. But I think that what I just laid out there is the record that the court has, and I do think it's sufficient for the reasons that I've just stated. And so I would urge the court to get past forfeiture and to address whether or not it thinks that there's, you know, on the merits, whether or not there's enough here to decide whether or not it should be reversed or not. With that said, I'll pass it back to the court. Okay. Thank you, Mr. Treden. We appreciate it. Thanks for the arguments from both sides. That wraps up our—